## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| KIESHA WILLIAMS, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )   No. 4:24-cv-00594-CMS |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| | ) |
| **Defendant.** | ) |

## MEMORDANDUM AND ORDER

Plaintiff Kiesha Williams brings this action appealing the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits and Supplemental Security Income. (Doc. 1). Because the final decision contains several errors and, in one respect, is not supported by substantial evidence, the Court reverses and remands the denial of benefits.

### BACKGROUND

*Factual Background*

Williams alleges that she suffers from a collection of ailments, including migraines, systemic lupus erythematosus ("lupus"), chronic pain syndrome, Sjogren's

---

[1] Frank Bisignano became the Social Security Commissioner in 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Bisignano is substituted for his predecessor, Martin O'Malley. *See also* 42 U.S.C. § 405(g) (noting that suits brought under this section "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

syndrome, rheumatoid arthritis, fibromyalgia, and peripheral neuropathy. (Doc. 1 at 2). Plaintiff alleges disability since August 26, 2017. (Doc. 9, Ex. 15 at 5).

*Five-Step Analysis Used by the Social Security Commission*

When reviewing a claim under 42 U.S.C. § 405(g), the Commission applies a five-step sequential test. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Teabeau v. Kijakazi*, No. 4:21-CV-703-NCC, 2022 WL 4598672, at *2 (E.D. Mo. Sept. 30, 2022) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "The claimant has the burden of proof to show she is disabled through step four," with the burden of production shifting to the Commissioner at Step Five. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel*, 221 F.3d 1065,1069 n.5 (8th Cir. 2000).

The first step is an evaluation of whether the claimant is engaging in work activity and whether any such work constitutes "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* Second, the Commissioner must examine the evidence to determine whether the claimant has a severe "impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)). Third, the Commissioner evaluates the severity of the impairment, and if the impairment crosses a threshold listed in the regulations, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the impairment is found to be severe but does not meet the threshold required for a presumptive finding of disability in Step Three, the Commissioner assesses the claimant's "residual functional capacity" (RFC) to perform sustained work based on the evidence in the record. Sections 416.920(e), 416.945; *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996) (stating the SSA's policy interpretations regarding the RFC assessment). Following the determination of the claimant's RFC, the Commissioner assesses whether the claimant can perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). If so, the claimant is not disabled. *Id.*

Finally, at Step Five, the Commissioner determines whether the claimant can make adjustments to other work, given the claimant's residual functional capacity, age, education, and work experience. Section 416.920(a)(4)(v). If the claimant can make adjustments to other work, he is not disabled. *Id.* Further, if a claimant reaches Step Five, the Social Security Administration must meet a limited burden of providing evidence "that other work exists in significant numbers in the national economy that [claimant] can do." Section 416.960(c)(2).

*Procedural History*

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in July 2018. (Doc. 9, Ex. 16 at 42).[2] She alleged a disability onset date

---

[2] Although the parties refer to transcript page numbers or exhibit numbers as marked on the documents themselves, due to the volume of attachments to the Transcript (Doc. 9) and the fact that the Transcript's division into exhibits does not follow a clear order, the Court will refer to these documents by their exhibit and page number as designated in the docket for the present case.

of August 26, 2017, and the same conditions causing disability as in the current case. *Id.* Plaintiff received an unfavorable decision from the Administrative Law Judge (ALJ) in November 2019. *Id.* at 2. She then appealed to the Appeals Council, which affirmed the ALJ's decision. *Id.* at 24. Thereafter, she appealed the decision to this Court pursuant to 42 U.S.C. § 405(g). *Id.* at 31. United States Magistrate Judge David D. Noce heard the case pursuant to the parties' consent under 28 U.S.C. § 636(c)(1). Judge Noce reversed and remanded the ALJ's decision for reconsideration. *See Williams v. Kijakazi*, 4:20-cv-1493-DDN, Doc. 8 (Oct. 27, 2020); *Williams v. Kijakazi*, 4:20-cv-1493-DDN, 2022 WL 823062, at *12 (E.D. Mo. Mar. 18, 2022).

Judge Noce reversed because "the ALJ erred in evaluating plaintiff's migraine headaches and her subjective pain complaints." *Williams*, 2022 WL 823062, at *12. Regarding Plaintiff's migraines, the Court found that "the ALJ substantially ignored the record evidence of ongoing migraines and failed to make a meaningful provision for these effects in the RFC finding." *Id.* at *10. The Court further found that the "record evidence shows plaintiff cannot perform sustained work functions during her migraine headache episodes; therefore, the RFC would have had to reflect the need for absences." *Id.* (citing *Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998)). Additionally, the Court pointed out that the tests relied on by the ALJ in reaching her determination, such as MRI scans, cannot show that a migraine is or is not present in the brain. *Id.* at *11 (citing *Migraine*: *Diagnosis*, Mayo Clinic (July 8, 2025), https://www.mayoclinic.org/diseases-conditions/migraine-headache/diagnosis-treatment/drc-20360207).

As to Plaintiff's subjective complaints of pain, the Court found that the ALJ erred by failing to explain "perceived inconsistencies" in the objective evidence and Plaintiff's subjective complaints of pain. *Id.* at \*12. The activities of Plaintiff singled out by the ALJ were that Plaintiff lived alone but needed help with daily activities, that Plaintiff shared a bed with her granddaughter and took her to school, and that Plaintiff worked part time for an autistic person and planned to open a community center. *Id.*

As a result of these errors, the Court found that the ALJ did not base the RFC on substantial evidence. *Id.* The Court reversed and remanded the ALJ's decision and ordered the ALJ to "reevaluate how plaintiff's migraine headaches affect plaintiff's functioning" and to "reevaluate her subjective complaints of pain and disability." (Doc. 9, Ex. 16 at 63). The Court further ordered the ALJ to "reevaluate plaintiff's Residual Functional Capacity with additional discussion explaining how the evidence supports the decision, specifically addressing consistency and supportability." *Id.*

On remand, the ALJ held another telephone hearing on December 20, 2023. (Doc. 9, Ex. 15 at 5). At that hearing, the ALJ received written evidence and heard testimony from Plaintiff before running out of time. *Id.* at 44, 67. The ALJ then held a supplemental telephone hearing on the same day, where a vocational expert testified and Plaintiff was reexamined by the ALJ. *Id.* at 71, 73.

The ALJ then issued a decision on January 29, 2024. *Id.* at 32. At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 8. Although Plaintiff had earned above substantial gainful activity for some time in the third quarter of 2017 and in the first and second quarters of

2018, the ALJ considered this "an unsuccessful work attempt." *Id.* Further, although Plaintiff testified that she had recently been hired by a nonprofit as of the hearing, she had not yet begun work. *Id.*

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "migraines; systemic lupus erythematosus ("lupus"); chronic pain syndrome; Sjogren's syndrome; rheumatoid arthritis; fibromyalgia; peripheral neuropathy; degenerative joint disease of the left knee; right lateral epicondylitis; lumbar degenerative disc disease; microvascular angina; subglottic stenosis; and obesity . . . ." *Id.*

At Step Three, the ALJ determined that none of the impairments met the thresholds set out by the Commissioner for an automatic finding of disability. *Id.* at 14.

At Step Four, the ALJ determined that Plaintiff had an RFC of sedentary work with additional limitations. *Id.* at 14-15. Based on this assessment, the ALJ found that Plaintiff could perform her past relevant work as a school secretary, administrative assistant, and receptionist. *Id.* at 30. As a result, the ALJ determined that Plaintiff was not disabled during her alleged period of disability. *Id.* at 31.

Beyond this summary, this Court incorporates by reference the facts from Plaintiff's Statement of Uncontroverted Material Facts, (Doc. 22, Ex. 1), and Commissioner Bisignano's Response, (Doc. 23, Ex. 1), along with the filed record (Doc. 9). The Court will reference specific facts as needed below.

## LEGAL STANDARD

The Court will affirm the decision of an ALJ "'if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole.'" *Kraus*

*v. Sual*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)). In other words, the factual findings of the Commissioner are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405; *see also Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The United States Supreme Court identifies "substantial evidence" as a term of art and directs a court using that standard to identify whether there is "sufficient evidence" in the existing administrative record "to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).

The standard for substantial evidence is not high. *Id.* at 103. "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Supreme Court further defines "more than a mere scintilla" as meaning only that there must be "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

Alleged legal error by the ALJ is reviewed *de novo*. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "'Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law.'" *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Collins*, 648 F.3d at 871).

Furthermore, while the Court "must consider evidence in the record that fairly detracts from, as well as supports" the agency decision, the Court will not reverse an agency decision "merely because [it] find[s] that substantial evidence exists in the record that would have supported a contrary outcome." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th

7

Cir. 2022) (internal quotations omitted). Instead, the Court "will disturb the [ALJ's] decision only if it falls outside the available zone of choice." *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) (quotation omitted) (alteration in original).

## ANALYSIS

Here, Plaintiff filed a Complaint (Doc. 1) and a Social Security Brief (Doc. 22) challenging the determination of the ALJ. Plaintiff appeals the decision of the ALJ on the bases that the ALJ erred by failing to properly: 1) evaluate Plaintiff's fibromyalgia; 2) evaluate Plaintiff's migraine headaches; 3) consider opinion evidence from physicians; and 4) weigh Plaintiff's subjective complaints of pain. (Doc. 22 at 2, 4, 9, 13). The Court will consider each of these arguments in turn.

### I.      The ALJ properly evaluated Plaintiff's fibromyalgia.

Plaintiff first argues that the ALJ did not properly evaluate her fibromyalgia by improperly relying on a lack of objective medical evidence to discount her subjective complaints of pain and related symptoms. (Doc. 22 at 2). In support, Plaintiff mainly relies on nonbinding cases from other courts. *Id.* at 3. She also cites *Cline v. Sullivan*, 939 F.2d 560 (8th Cir. 1991), in support of her contention that "fibromyalgia is a medical condition which can reasonably be expected to cause pain," without elaboration. (Doc. 22 at 3–4).

Plaintiff is correct insofar as the Eighth Circuit in *Cline*, 939 F.2d at 566–67, reversed the ALJ's decision discrediting the claimant's subjective allegations of pain stemming from fibromyalgia. But the bases for the reversal were that substantial evidence did not support the ALJ's adverse credibility determination of the diagnosing physician

8

and that the other factors relied on by the ALJ were "insubstantial." *Id.* at 567. Also, *Cline* later was limited in *Edwards v. Barnhart*, 314 F.3d 964, 966–67 (8th Cir. 2003), which interpreted the *Cline* court's concern to be merely "that the ALJ failed to explain the inconsistencies between the [claimant's] activities and [her] subjective complaints."

Here, the ALJ based her opinion on substantial evidence that, although Plaintiff was diagnosed with fibromyalgia and she reported a "significant history of widespread pain," the record did not support Plaintiff's alleged level of limitation. (Doc. 9, Ex. 15 at 24). Indeed, "not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled." *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (quoting *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011)). The ALJ considered examinations of Plaintiff which "generally demonstrated steady gait with no assistive device" and which noted on several occasions that Plaintiff's claims of pain were out of proportion to her clinical examination and laboratory findings. (Doc. 9, Ex. 15 at 24); (Doc. 9, Ex. 13, at 480, 697, 704) (gait); (Doc. 9, Ex. 20 at 95) (same); (Doc. 9, Ex. 39 at 29, 42) (comparing complaint of pain with question about exercise); *see also Grindley v. Kijakazi*, 9 F.4th 622 (8th Cir. 2021) (considering results of residual functional capacity assessment as substantial evidence).

The ALJ's assessment of Plaintiff's subjective complaints of pain also included repeated reports of exercise the ALJ concluded to be inconsistent with Plaintiff's allegations of disabling fibromyalgia, and Plaintiff's improvement with treatment. (Doc. 9, Ex. 15 at 24, 27). Also, the ALJ limited Plaintiff to sedentary work, which would

9

require little physical exertion from Plaintiff in any event. *Id.* at 14.[3] The ALJ further included the limitations in Plaintiff's RFC that she "can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. She can frequently reach in front, laterally, or overhead with the right upper extremity." *Id.* at 14-15.

To be sure, Plaintiff points out contrary evidence in the record regarding Plaintiff's subjective complaints of pain, (Doc. 22 at 13-15), but that evidence does not place the ALJ's assessment beyond the "available zone of choice." *Bonham*, 177 F.4th at 940 (quotation omitted). As noted above, the ALJ observed evidence in the record that Plaintiff had reported daily exercise and that residual functional capacity examinations of Plaintiff produced results inconsistent with Plaintiff's complaints. This amounts to substantial evidence to support the ALJ's discounting of Plaintiff's subjective complaints of pain from fibromyalgia.

To the extent Plaintiff asks the Court to reweigh the evidence by, for example, giving greater weight to Plaintiff's reports of certain daily activities, *see e.g.*, (Doc. 22 at 3, 13-14), over others credited by the ALJ, *see e.g.*, (Doc. 9, Exs. 23 at 68, 24 at 482, 27 at 299), the Court cannot do so. *See Bonham*, 177 F.4th at 940.

---

[3] "Sedentary work" is defined as "involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and "work performed primarily in a seated position [that] entails no significant stooping." *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983).

Finally, the ALJ noted that Plaintiff refused prescribed treatment for fibromyalgia. (Doc. 19, Ex. 15 at 24). "An ALJ reasonably may conclude that a claimant's failure to pursue treatment for alleged impairments is inconsistent with subjective complaints of disabling conditions." *Swarthout*, 35 F.4th at 612.

Accordingly, the Court finds that the ALJ properly evaluated Plaintiff's fibromyalgia, and the decision was supported by substantial evidence in the record.

## II.    The ALJ did not properly evaluate Plaintiff's migraine headaches.

Plaintiff next argues that the ALJ erred in improperly evaluating Plaintiff's migraine headaches by not following relevant authority and by relying on mischaracterizations of the record. (Doc. 22 at 4). Plaintiff further alleges that the ALJ did so in direct contravention of Judge Noce's prior order of remand. *Id.*

The ALJ, on remand, reconsidered Plaintiff's migraines and characterized them as a severe impairment. (Doc. 9, Ex. 15 at 16). Plaintiff nonetheless argues that the ALJ did not "meaningfully discuss the . . . impact of these headaches on [Plaintiff's] functional capacity." (Doc. 22 at 5).

Plaintiff also alleges that the ALJ disobeyed Judge Noce's previous order in assessing Plaintiff's migraines. (Doc. 22 at 4). This Court's review of the record reveals that the ALJ conducted some analysis specifically prohibited by Judge Noce's opinion, such as reliance on objective tests unrelated to diagnosing migraines, in her decision on remand. *See Williams*, 2022 WL 823062, at *10–11. For example, the ALJ referenced negative MRI scans, (Doc. 9, Ex. 15 at 17), which Judge Noce previously had found to be insufficient to support the ALJ's RFC finding because a negative MRI simply is not a

11

basis to rule out a diagnosis of migraine headaches. *Id.* at *11; *see also Migraine: Diagnosis & Treatment*, Mayo Clinic (July 8, 2025), https://www.mayoclinic.org/diseases-conditions/migraine-headache/diagnosis-treatment/drc-20360207 ("An MRI of the brain solely tells you about the structure of the brain but tells you very little about the function of the brain. And that is why migraine doesn't show up on an MRI. Because it's abnormal function in the setting of normal structure.").

Furthermore, the ALJ improperly summarized parts of the record related to Plaintiff's headaches. For instance, the ALJ stated, "In early January 2021, the claimant's medication was reduced due to concern for polypharmacy, and the subsequent record indicates only occasional reports of headaches, inconsistent with her testimony of ongoing debilitating headaches on a daily basis . . . ." (Doc. 9, Ex. 15 at 19). The ALJ cited three exhibits to support this finding. The first exhibit, a medical report, supports the ALJ's finding only to the extent that, in January 2021, Plaintiff's medication was reduced due to concerns of medication headaches. (Doc. 9, Ex. 23 at 135). This exhibit does not support the ALJ's finding that the reduction in medication caused Plaintiff to have "only occasional reports of headaches . . . ." (Doc. 9, Ex. 15 at 19).

The second exhibit is a report from Plaintiff's hospital stay for complaints of nausea, vomiting, and abdominal pain over the course of a week. The hospital report states that, "[d]uring hospital stay patient developed a persistent migraine," which may have been "triggered" by the acute pain, nausea, and vomiting she experienced. (Doc. 9, Ex. 30 at 14). The ALJ cited this exhibit as evidence that migraines are not a "typical

12

event" for Plaintiff. (Doc. 9, Ex. 15 at 18). The report does not support that finding, as it does not suggest that the migraine was atypical or that Plaintiff had not suffered other migraines. (Doc. 9, Ex. 30 at 14-15).

The third exhibit is a telemedicine appointment report from August 2022. (Doc. 9, Ex. 33 at 101). This exhibit, while including no reference to Plaintiff's headaches, was admittedly a "limited exam due to the nature of the visit[.]" (Doc. 9, Ex. 33 at 101, 104). Meanwhile, several other reports from around the time of the telemedicine report referenced Plaintiff's continued chronic headaches. *Id.* at 11 (June 2022 doctor report stating that Plaintiff had no headaches "other than her chronic migraines"); *id.* at 62 (May 2022 follow-up visit to April 2022 hospitalization stating that Plaintiff "continues to have migraine headaches several times a week").

These errors by the ALJ mirror those found by Judge Noce in the prior order of remand. There, the Court concluded that "the ALJ substantially ignored the record evidence of ongoing migraines and failed to make a meaningful provision for these effects in the RFC finding" where the ALJ had found that Plaintiff's migraines "rarely occur currently, because she avoids their triggers." *Williams*, 2022 WL 823062, at *10, *11. The Court made clear that these errors were not harmless. It found that "the relevance of plaintiff's migraines involves plaintiff's ability to engage in steady employment" and "[t]he record evidence shows plaintiff cannot perform work functions during her migraine headache episodes; therefore, the RFC would have had to reflect the need for absences." *Id.*

Thus, the ALJ failed to follow the order of remand by again erroneously relying on MRI scans and ignoring record evidence of ongoing migraines in formulating her RFC finding. As the Supreme Court stated in *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989), "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." Quite clearly, the ALJ's deviations from Judge Noce's previous order of remand are legal error requiring this Court once again to reverse and remand.

Additionally, the ALJ did not identify substantial evidence to support the RFC in this respect. The ALJ pointed to a number of doctors' statements that a "significant component" of Plaintiff's headaches is likely medication overuse, also referred to as "polypharmacy." (Doc. 9, Ex. 15 at 17, 18). Specifically, several doctors were concerned that Plaintiff's overuse of Tylenol contributed to her symptoms. *Id.* Plaintiff nonetheless continued to overuse Tylenol. *Id.* at 18.

An ALJ may properly consider "an individual's attempts . . . to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities . . . ." *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). Moreover, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.*

But as acknowledged by the ALJ, by the time of the hearing, Plaintiff's medication had been reduced due to concern for polypharmacy. (Doc. 9, Ex. 15 at 19). The ALJ

14

alluded to this fact in formulating Plaintiff's RFC, explaining that Plaintiff's headaches subsided following the reduction of her medication. *Id.* As already explained, however, the record does not support the ALJ's finding that Plaintiff's headaches subsided following the reduction in medication. Accordingly, while medication overuse may have explained Plaintiff's migraines in the past, it was no longer a viable explanation by the time of the ALJ's formulation of the RFC.

For these reasons, the Court concludes that the ALJ did not properly evaluate Plaintiff's migraine headaches in that the ALJ's decision contains legal errors and is not supported by substantial evidence in the record.

### III.   The ALJ properly weighed the opinion evidence.

Plaintiff's next contention is that the ALJ failed to properly weigh the opinion evidence of four doctors. Two of these doctors, Drs. Debroy and Nelson, are State agency medical consultants, one was Plaintiff's neurologist, and one is Plaintiff's treating physician. (Doc. 9, Ex. 15 at 28-29). Plaintiff further argues that by rejecting all four medical opinions as unpersuasive, and by evaluating Plaintiff's RFC without relying on those opinions, the ALJ's decision was not based on substantial evidence. (Doc. 22 at 9).

Plaintiff's argument is contrary to the law on this issue. "'[T]here is no requirement that an RFC finding be supported by a specific medical opinion.'" *See Bonham*, 177 F.4th at 940-41 (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). In fact, the Eighth Circuit has upheld an RFC determination in the absence of a "direct, 'functional' medical opinion" where the medical record was adequately

developed. *Id.* (citing *Hensley*, 829 F.3d at 930-32). To call the medical record in this case "adequately developed" would be an understatement.

Even if Plaintiff's argument was not legally incorrect, it mischaracterizes the factual record. The ALJ did not reject all four medical opinions as unpersuasive. The ALJ found the opinion of Dr. Debroy to be "generally persuasive" and the opinion of Dr. Nelson to be "partially persuasive." (Doc. 9, Ex. 15 at 29).

Inasmuch as the ALJ rejected the opinions of Plaintiff's experts, including her treating physician Dr. Inaba and her neurologist Dr. Loftspring, the ALJ provided specific reasons for doing so. *Id.* at 28-29. And these reasons addressed the supportability of the medical opinions. *See* 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency . . . ."); *see also* 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.").

The ALJ found Dr. Inaba to be unpersuasive because her opinion was vague. (Doc. 9, Ex. 15 at 28). Specifically, Dr. Inaba provided no detail as to how Plaintiff's lupus and Sjogren's diagnoses affect her capacity to work. *Id.*

The ALJ found Dr. Loftspring to be unpersuasive because his opinion was both vague and speculative. *Id.* Dr. Loftspring did not elaborate on how Plaintiff's migraines were debilitating or on her specific symptoms. *Id.* at 28-29; (Doc. 9, Ex. 14 at 350). He went on to identify some common symptoms of migraines aside from pain, including

memory and attention problems, anxiety, and depression. The ALJ accurately pointed out that Dr. Loftspring jumped to the conclusion that "this disease is causing more symptoms other than pain" without tying any of these other symptoms to Plaintiff's case. (Doc. 9, Ex. 14 at 350); (Doc. 9, Ex. 15 at 28-29). Thus, the opinion "appears to be based upon a general understanding of migraines as a condition" and could be discounted in deciding Plaintiff's RFC. (Doc. 9, Ex. 15 at 29).

The vagueness of Drs. Inaba and Loftspring's opinions directly impact their supportability. Because these medical opinions consisted of conclusory statements, they provided no "relevant . . . objective medical evidence and supporting explanation." 20 C.F.R. § 404.1520c(c)(1). The ALJ's conclusion that these opinions lacked supportability thus was not erroneous under 20 C.F.R. § 404.1520c.

Similarly, Plaintiff challenges the ALJ's limiting Plaintiff to walking or standing for only two out of eight hours of each workday because that limitation was not expressed by either physician the ALJ found to be at least partially persuasive. (Doc. 22 at 11). Dr. Debroy, for instance, expressed that Plaintiff would be able to walk or stand for six out of eight hours in a workday. (Doc. 9, Ex. 6 at 7). The ALJ weighed this opinion against other medical evidence in the record that Plaintiff had greater limitations and determined that Dr. Debroy's recommendation was only partially persuasive. *Austin*, 52 F.4th at 729 ("[T]he ALJ is free to accept some, but not all, of a medical opinion."). Although the ALJ did not go into specifics as to what this evidence was, "[t]he ALJ's brevity is not reversible error," *Grindley*, 9 F.4th at 631, and the record contains substantial medical evidence of Plaintiff's greater limitations. This is particularly so here

17

considering that the ALJ's RFC benefited Plaintiff by accepting some of Dr. Debroy's findings and restricting Plaintiff to a greater extent than suggested by Dr. Debroy based on other medical evidence.

Therefore, the ALJ properly weighed the opinion evidence.

## IV.   The ALJ properly weighed Plaintiff's subjective complaints of pain.

This point is merely a reiteration of Plaintiff's arguments that the ALJ did not give proper weight to her subjective complaints of pain. Though, in this point, Plaintiff addresses her subjective complaints of pain more broadly, she offers no additional claims not already considered above. *Compare* (Doc. 22 at 13-15), *with id.* at 2-4. As this Court already has concluded, the ALJ properly weighed Plaintiff's subjective complaints of pain.

### CONCLUSION

Because the ALJ erred in evaluating Plaintiff's migraine headaches, the Commissioner's decision is **REVERSED and REMANDED** for reconsideration of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income. The Court enters a separate Judgment concurrently with this memorandum and order.

Dated this 14th day of July 2026.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE